Court is convened this morning to hear oral argument in one matter. Judge Ambrose is not with us physically, but I believe he is with us electronically. I'd also like to note that today is the first time that we are joined by our newest colleague, Judge Paul Meadey, and we greet him and are pleased to have him a member of this court. So with that said, I'll call the matter of Astardo-Vale v. Attorney General of the United States, and I'll call upon counsel for the petition. May it please the court. My name is Joseph Hohenstein and I am representing AMICUS, the American Immigration Lawyers Association here today. I will present a five-minute formal presentation first and then take questions for five minutes. Ms. Korpis, counsel for petitioner, will take the ten minutes after, and we respectfully request ten minutes of rebuttal time that we would equally share. All right. Very well. Thank you. Words matter. This case came clear and unambiguous language in section 1231B3, double little i, 8 U.S.C., 1231 of the INA. Judge Ambrose wrote for this court in a locker and used words like plain and clearly to describe the court's reasoning. The court did not conduct a second step of the Chevron analysis. It didn't do so because the statute is clear, and so only the first step would have been implicated. Now, I trust that once this court, en banc, reviews the locker decision and the underlying statute, you will recognize that section 1231B3, double little i, has a plain requirement that a crime must be an aggravated felony before it can be considered a particularly serious crime. I will first review the locker decision and then each of the elements of the 1231B32 language. The panel in a locker stated that its decision was based on the plain language. It engaged only in a single step of the Chevron analysis because the second step was unnecessary. As a result, the government's invocation of brand X is incorrect. The government wants to replace its own perception of ambiguity for the court's finding of clarity, simply put, because it disagrees with the result. As we discussed in the previous oral argument, this court is the expert at interpreting whether statutory language is plain or ambiguous. The government cites to the fact that the locker decision used words like plain and clearly, but not the word unambiguous. That argument is a red herring because those words are all synonyms. I invite the court to review whatever thesaurus you wish. You will find that those three words are synonyms with each other. The board, frankly, misinterpreted a locker, and this court should reject any attempt to attack it. When we turn to the actual language of 1231B3, double little I, we find that the court in a locker was correct. There are three separate parts of that section. The opening sentence of the subsection, and then two sentences in a hanging subparagraph that follows. The first sentence states that a person is ineligible for withholding of removal if, having been convicted of a particularly serious crime, he or she constitutes a danger to the community. This part clearly sets out that a conviction for a particularly serious crime renders an individual ineligible for withholding of removal. Under the interpretation of the court, that sentence has effect and impact. The second part is the first sentence of the hanging paragraph at the end of the subsection. That sentence sets forth that any aggravated felony or felonies for which the sentence is five years or more is automatically, per se, a particularly serious crime. Now, the third part is the second sentence right behind that first one in the hanging paragraph. That sentence provides a proposition that a crime can be particularly serious, notwithstanding the sentence that's enforced. This sentence modifies the one before it specifically, and that's something that was pointed out by the court in Alaca. It includes the baseline requirement that a particularly serious crime must be an aggravated felony. Now, when we talked about this in oral argument before, we discussed how this sets up the window in which discretion is exercised. There's a bar at the top, which is a five-year aggravated felony, and then there's a floor, which is an aggravated felony with any other type of sentence that's less than five years. Right now, that's the law of this court, and it's based on clear language. And for these reasons, I request, and the petitioner requests, that the court should uphold the Alaca decision based on that plain meaning, that a crime must first be an aggravated felony before it can be considered particularly serious. Counsel, as we struggles with the meaning of particularly serious crime, the start of bail has sought both asylum and withholding. Presumably, we must consider the appropriate method for discerning a particularly serious crime in each statute. Our Alaca precedent discussed only withholding, because that was what was at issue. Is it your view that whether we apply Alaca or approve the BIA's case-by-case approach, the meaning of particularly serious crime has to be determined in the same way in both statutes? I would say it certainly can and should be with one caveat. In the second subsection, after how particularly serious crime is defined, that subsection basically calls on the Attorney General of the agency to establish regulations that would define further any type of particularly serious crime in the asylum context. Now, the Attorney General has never issued those regulations. That would be the one difference. Other than that, if you read the statute, statutory language, any aggravated felony in the asylum context is a particularly serious crime. The way we're asking for that to be interpreted in a withholding statute is the same. How can it be the same, Mr. Hohenstein? You've just said that in the asylum context, every aggravated felony has to be a universe known as particularly serious crimes. But if we adopt your reasoning and say Alaca controls, you've actually said that, given what Alaca says, particularly serious crimes are actually a subset of aggravated felonies. How can it be the same if your argument is, in the asylum context, aggravated felonies are wholly within the universe of particularly serious crimes, but in the withholding context, particularly serious crimes are wholly within the universe of aggravated felonies? I believe I misspoke in the sense that I would say that aggravated felonies are the subset. How does it make sense for Congress to say, using the same term in asylum, we mean aggravated felonies to be a subset of particularly serious crimes, but then in withholding to say, we mean for particularly serious crimes to be a subset of aggravated felonies. Well, the reason for that is two separate forms of relief. Asylum and withholding both come from the Convention for the Protection of Refugees. An asylum in U.S. law provides a full set of relief and rights. A person eventually can become a permanent resident and a U.S. citizen. A person receiving withholding has a much more limited set of rights. And one of the main reasons for establishing the second definition, the second relief of withholding, was the recognition that there would be people who committed certain types of crimes, who had done certain things wrong, that would not be eligible for asylum, but still deserving of protection and withholding. It's the same term, but it's got to mean different things. In the end, it probably does have a different meaning. Now, again, remember the caveat in the asylum context. The Attorney General can, through regulation, expand that definition of particularly serious crime. Doesn't that mean, then, that Congress intended that particularly serious crime could include, but is not limited to, aggravated felonies? It absolutely does. And in the withholding context, it's limited to anything that is already an aggravated felony. And you make that argument based upon the clause, the preceding, the previous sentence shall not preclude. Correct. The way the sentences relate to each other, the first sentence of the hanging paragraph establishes the bar. If that's the case, then why does the sentence continue by saying, shall not preclude the Attorney General from determining, which it does on a case-by-case basis since the 80s? We'll allow you to answer the question. Could you repeat the question? The question was, that sentence you lean on, in which Alaco leaned on heavily, to suggest that it's limited to aggravated felonies, that they equal each other? The sentence continues by saying, shall not preclude the Attorney General from determining, and then the sentence continues. Correct. Determination conveys, presumably, a case-by-case adjudication, doesn't it? In withholding, yes. The way the statute was set up for asylum, that discretion would have to be exercised through regulation. In withholding, it can be a case-by-case analysis, provided that you have that floor of the crime first being an aggravated felony, and that window of discretion still exists. Thank you. We'll have you back. Are you handling rebuttal, Mr. Hohenzollern? Thank you. Are you handling rebuttal? We will be splitting time for rebuttal if the Court sees fit. If not, I can handle it. We'll take that under advisement. Okay, thank you. Ms. Clapuz? Good morning, Your Honors. May it please the Court. My name is Sherelle Corpus, and I represent the petitioner, Carlos Bastardo-Lade. To follow on what Mr. Holstein was saying to the Court, it really does make sense that only an aggravated felony would render an applicant ineligible for withholding of removal. With withholding of removal, an applicant must show that it is more likely than not that the applicant would suffer persecution upon return to their country. It's a higher standard of proof. So it should be a more serious level of crime that knocks them out of this protection for their life. In asylum, asylum is discretionary. A person could be denied asylum, even though eligible as a matter of statute, if they're found not to be eligible for as a matter of discretion, even without finding of a particularly serious crime. In your view, is it possible to leave a LACA in place as it relates to withholding and affirm the BIA as it relates to asylum? It is possible to maintain a LACA and perhaps sustain the board's holding in asylum, but respectfully, I would argue that with a lack of regulations as contemplated in 1158, we're really left with 1158A2, the alien having been convicted by a final judgment of a particularly serious crime is a danger to the community of the United States. This language is the same. It's even numbered the same. It's A2 in 1158 and it's A2 in 1231. I don't think that mirroring is an accident. Are you saying that it is the same or it isn't? I just heard your colleague say, no, it's different. So that would imply that Judge Greenaway's question would be answered yes, the way I think you did. That you could, you could uphold the BIA, we could uphold the BIA's view on the asylum context and say, but a LACA controls and withholding. Is that right? Yes, Your Honor, but I would respectfully disagree with that position. I think that with, I think that the government is required to promulgate regulations to expand the scope of particularly serious crime. But you're, you're assuming that when they say may designate by regulation, that is the exclusive way by which additional offenses could be designated particularly serious crime. How do you reconcile that with the fact that the BIA has the authority to act or the Attorney General has the authority to act by adjudication when the statute is written in permissive language? It is difficult to go against the, the history of case by case adjudication on this issue. And I still, my position in the asylum context would be that regulations are necessary in order to provide guidance. We have. Okay, tie it to the text though. You're making a policy argument now that doesn't really help us. Tie it to the text of the statute and respond to Judge Torch's question. As I'm, as I'm pulling out the statute, Your Honor, I'd like to point out that the petitioner was not convicted of an aggravated felony. He was found not to have been convicted of a crime involving moral turpitude even. And yet his crime was found to be, to meet the definition of particularly serious and without... That's the issue before us, whether or not that is a subset of aggravated felonies. That's what we're trying to figure out. Whether... Particularly serious crime is a subset of an aggravated felony. There's a lack of control insofar as you have to first have an aggravated felony before you get to consideration of whether or not particularly serious crime does it not control. The scope of the application of particularly serious crime, our position is, can only be expanded by regulation. And my position would be that case-by-case adjudication of the applicability of particularly serious crime in the asylum context is mistaken because then we... I'm sorry. I want you to expand on that, but I want to know where in the record you developed this point. Because when I looked back at your briefing for the BIA, it was about, well, it has to be an aggravated felony, or at least it has to be a crime involving moral turpitude. You preserved that, but I'm not sure I saw you preserve the issue about it has to be done by regulation if it's going to be expanded. Where, where did you argue that? I did not argue that below, Your Honor. It was my oversight, but I feel that it's in the public's interest now before the entire court to bring this issue to your attention. Counsel, what do we do with the fact that Congress used two different terms here? We have the term particularly serious crime. If Congress wanted to do what you've suggested, why wouldn't it have simply talked about the term aggravated felony and then added on a single special rule about expanding it by regulation? We have two terms to work with, and when we look at the term particularly serious crime, we also have the Supreme Court telling us in cases like Laura Lard v. Pons that Congress is presumed to adopt an interpretation, whether administrative or judicial, that has become a common understanding of the term. And we have back to 1982 the BIA interpreting the term particularly serious crime to mean a case-by-case determination. Why, in looking at that term, separate and apart from the term aggravated felony, shouldn't we use that reenactment canon to say Congress, having repeatedly amended the statute and continued to use the term particularly serious crime, adopted the meaning of case-by-case determination for that term? Focus on the 96 amendments in answering the question. I'm sorry? Focus on the last 96 amendments when you answer that question. I'm not sure what you mean. ARIRA changed the law. So as you're answering that, keep the fact that ARIRA changed the law in 1996 in mind. I'm sorry, Your Honor. I'm not making the connection there with ARIRA and ALACA. But to get to what I think the question is about particularly serious crime and case-by-case adjudication, I don't feel that we need to be, how do you say, so locked into the history of how a term has been handled. We've seen in DMIA that after years of case-by-case adjudication of 18 U.S.C. 16B, it was ultimately found to be constitutionally void for vagueness. And I would urge the court to take a look at the asylum statute and at B2B2, where the attorney general is invited to make regulation to expand the scope of particularly serious crime. Well, Judge Krause mentioned the BIA and the history there. How do you also then distinguish our sister circuits? I mean, this is an area where consistency is probably a good thing. Our sister circuits have gone the other way. How do you distinguish those cases, Gao and Delgado? It was a surprise that the Supreme Court denied cert in Gao and allowed that circuit split to stand. And I think that... Well, we'd be outside enjoying the good weather if that happened, so... He would be. I'd be focusing on these really important... Of course you would. Of course you would. Thank you, Your Honor. Okay. Can you distinguish those, our sister circuits? I distinguish it by saying they did not find the statute to be unambiguous, while Anilaka, the third circuit here, did find the statute in the holding context to be unambiguous by saying that it was plain, using words like clearly and explicitly. That doesn't answer the... I mean, the question of case-by-case adjudication seems to me to be a separate point that's tied to your assertion that the categories of particularly serious crime can only be expanded by regulation, whereas the fourth, the sixth, the seventh, the ninth, the eleventh circuits have all said no. That statement about by regulation doesn't limit the Attorney General's ability to expand the universe of particularly serious crimes by adjudication as well as by regulation. Why is it, as Judge Chigurhs is asking, why is it that all those other circuits are wrong when they say case-by-case adjudication is permitted by the language of the statute? You may answer the question. Thank you. It is still possible for an application for asylum to be denied as a matter of discretion without reference to whether it's particularly serious crime, and I would say that's where that case-by-case adjudication power would lie. Thank you. I will indicate to counsel that one of you may reply by way of rebuttal. My reason for that ruling is that it is difficult enough in an en banc proceeding for individual members of this Court to get questions in, and I think in fracturing the rebuttal time, that's going to make it even more difficult. So you may decide between you which of you will take rebuttal. I'll present you. Very well. Thank you. We'll hear from counsel for the government, Mr. Moss. Thank you, Your Honor. I may please the Court. Benjamin Mark Moss for the respondent, the Attorney General, asking the Court to overrule ALACA and deny this petition for review. For the entire history of the particularly serious crime bar since 1980, Congress has always given the Attorney General broad authority to say what is not and what is a particularly serious crime. Now, Congress has later contracted and then also later expanded that authority, but the grant of authority to the Attorney General to say what a particularly serious crime is has always been broad. Here's a little history. In 1980, Congress created the particularly serious crime bar, but it didn't define particularly serious crime. Rather, the Board defined that term in 1982 as it explained in Matter of Frantescu. In the immigration category of aggravated felony, a separate term didn't even exist until 1988, and that was when Congress made it a deportability ground. So far, they're not linked. It wasn't until two years later in 1990 that Congress first linked these two terms, saying that all aggravated felonies are automatically particularly serious crimes. But here again, Congress never defined particularly serious crime, nor did it take away the authority of the Attorney General to say what other crimes might be considered particularly serious. Six years later in AEDPA, Congress softened things up a little bit by giving the Attorney General discretion to say that even though a crime is an aggravated felony, the Attorney General doesn't have to consider it to be particularly serious. But yet again, no definition of particularly serious crime by Congress and no retraction of the general authority to say what is and what is not a particularly serious crime. And that brings us to the current statute, IRERA, also 1996. Here again, Congress did not take away the Attorney General's broad authority to generally say what is and what is not a particularly serious crime, but instead articulated the current version of a limitation. And that's the AGFEL plus 5 that we now have in that hanging paragraph. So to sum up, for 39 years, the statute has always contained a gap. Congress has never defined particularly serious crime. It has only given certain limitations on the Attorney General's authority. ALACA was mistaken because ALACA looked at IRERA's AGFEL plus 5 provision and it mistook that for a general rule. It mistook that for a definition. But there is no definition of particularly serious crime in the INA, and there never has been. ALACA's narrow reading not only overlooks the history and the plain language of the statute, but it also seriously frustrates Congress's intent to protect the public from people who have been convicted of particularly serious crimes. That's at the heart of the particularly serious crime bar. And under Chevron, the board is entitled to interpret the statutory gap and give meaning to the undefined phrase particularly serious crimes. The board did in matter of Frantescu, matter of LS, matter of NAM, matter of MH, a whole bunch of published board decisions that are worthy of deference, as six or maybe even seven of this court's sister circuits have recognized. Now that this court is sitting on bunk, we ask this court to do the same, to overturn ALACA and uphold the board's reasonable interpretation of a statutory gap, no definition of particularly serious crime. The board's definition is a reasonable one. Finally, turning to the specific facts of this case, upon overruling ALACA, we ask the court to find that the board did not abuse its discretion in concluding that Mr. Bastardo Valle's crime was a particularly serious one in light of the crime's elements and the circumstances. Indeed, the board did not abuse its discretion in concluding that using force to overcome a person's desire to terminate a sexual encounter is necessarily particularly serious. Thus, the board did not abuse its discretion in concluding that Mr. Bastardo Valle's conviction for second-degree unlawful imprisonment was particularly serious. We thus ask the court to overturn ALACA, uphold NAM, and deny this petition for review. Your Honor, I see that my five free minutes are nearly up. I welcome the opportunity for questions. Thank you, Mr. Moss. I'm grappling with your position that ALACA did not hold that the withholding statute is unambiguous. The opinion in ALACA explicitly states, and you've acknowledged it, that the plain language and structure of the withholding statute direct it to the conclusion that it reached. Doesn't that reflect that ALACA held that the withholding statute is unambiguous? Your Honor, that question gets to the Brandeis analysis, which we think this court sitting en banc need not reach because the court has the power to simply overturn ALACA. However, I do think there is merit to the board's position in matter of MH, which interpreted the ALACA decision to say that although the ALACA case said, I believe it did say the language was plain, the ALACA case didn't say unambiguous. But I would again urge this court sitting en banc. But you see at least one potential problem with that, don't you, as a matter at least of policy, that if we're to reach the conclusion that there was no actual holding merely because the words we hold that, or merely because the word unambiguous was not implied, we may be inviting agencies to simply ignore our precedent in various settings. And I think, Your Honor, can avoid that risk by not reaching the Brandeis issue and instead ruling as narrowly as possible. You're just not answering his question. Not at all. It's a nice dodge, but you're not answering his question. Has the Supreme Court ever required a court to say unambiguous in determining whether or not the court found that a statute was unambiguous? Or have we? No, Your Honor. I think that – Kind of a wooden kind of a rule, isn't it? Or wouldn't it be? Yes. And I think that as Judge McKee may recall when we spoke last year on this – Oh, don't give him that much credit. The government isn't suggesting that there need to be magic words, but rather a fair reading of the court's precedents. I hope – Well, he's asking you for a trick word. Yeah, it sounds like you're saying you never said unambiguous, so it's not ambiguous. Yeah, you said the statute was plain. You said the language was plain. You said the context made it plain. But you never said unambiguous. If that's not an invocation of a magic word argument, it's hard to imagine what would be, Mr. Moss. What is it you're saying then? Well, Your Honor, the board explained it this way. Because the ALACA decision used the phrase suggests and implied, the board was interpreting ALACA to be doing some manner of interpretation. So please then answer the Chief Judge's question. Why isn't that just opening the door for every agency to say, well, we saw the word implied in there someplace, so we're just ignoring what you said. You may have said the statute was plain. You may have laid down a precedent, but guess what? We're the agency, and we get to decide. How does that work? If the agency does come back and do that, then this Court is free, as it is considering doing now, in saying, well, we've reviewed our precedent. We didn't say it was unambiguous. So no agency, you're not allowed to do a Brand X here. I think the Court still has that power. Well, it's kicking the can down the road. In Brand X, the Court referred to its holding in Chapman and said that in Chapman the Court declared the statute unambiguous. But in Chapman, the Supreme Court never used the word unambiguous. It used the same language that we used in Allocca. It didn't even go quite as far as we did in Allocca, but it looked in Chapman to the structure and context of the statute at issue there. The same as we did in Allocca, and the Court's language in Chapman really is not quite as explicit in finding the statute unambiguous as we were in Allocca. So you're kind of asking us to impose a requirement of clarity in drafting that the Supreme Court doesn't impose upon itself. Actually, Your Honor, at this point on Bonk, I'm not asking the Court to retry. You're asking us to renew Allocca. I know I'm trying to get you past that argument. Your Honor, I think I would just rest on this point on what the Board said in its interpretation in MH, that the Allocca decision indicated by saying words. Indicated. You said it. Indicated. Yes, Your Honor, that the Board said in matter of MH that the Court's use of the term suggests and implied meant some level of interpretation of an ambiguous statute. It's my understanding that the government's position is that the words particularly serious crime means the same thing in both withholding and asylum. Am I correct about that? That's correct, Your Honor. That's what the Board said in matter of MH, and that is our position. Okay. I have two questions. One is, how do you address your adversary's point that asylum and withholding of removal have different types of proof? One is mandatory, one is discretionary, et cetera. You're familiar with the distinctions. How do you deal with their point that perhaps the meaning of that word should be different depending on the release law? They're the same statutory phrase, Your Honor. Particularly serious crime, particularly serious crime. Reading the asylum explanation of it and the withholding explanation of it almost identical introductory phrases are used if the Attorney General decides versus if the Attorney General determines, I think. There may be some extra commas here and there. But they're the exact same phrase. And the Board reasonably interpreted them in matter of, I believe, NAM as meaning the same thing. What about the absence of the limitation made by regulation, that absence? That's in 1158. It's not in 1243 or 1253, whatever it is. That's right, except for certain limitations and grants that are not identical in asylum versus asylum. Is that significant or should we ignore it? Well, I don't think you should ignore it, Your Honor. But I don't believe, and I think there's precedent on this point, that the explicit granting of authority in asylum to promulgate regulations defining particularly serious crimes doesn't take away the grant of authority to generally decide by adjudication. And where is that found? Well, other circuits, I believe, have explained this. They relied upon Chevron deference to find that. That's my recollection, Your Honor. Statutorily, where is that found? The case-by-case adjudication. That isn't found. It's because there's a gap that's playing on its face. One thing that I think is helpful, Your Honor, is to compare when Congress has definitely used the definition compared with when it hasn't. For instance, in the crime of domestic violence provision, 8 U.S.C. 1227 A2EI, which I'll briefly read that, it says for purposes of this clause, the term crime of domestic violence means, and then it goes on to say what that term means. So I think the court has to read the statute as a whole, including the crime of domestic violence provision in the INA, to say that Congress knew how to give a definition, and that's not what it did in the withholding statute. All right, if there's no definition, why should we defer to the agency when courts such as this one seem at least equally, if not better, situated to make a decision as to whether something is or isn't a particularly serious crime? Because under Chevron and under the Board's precedent, when there are gaps in the statute that the Attorney General... Why is it a gap? Any time something's not defined, it's automatically a gap? I'm not sure about any time, Your Honor, but in this case, I think the history and the tradition since 1980, when the phrase was first enacted, says that, yes, this is a gap. Congress has enacted several amendments, I think three, since matter of Francesco, and it has never disagreed with that case in terms of the case-by-case adjudication approach. Congress could have said, we don't like case-by-case adjudication. Well, maybe we could have case-by-case adjudication, but there shouldn't be deference. Isn't that possible? I think it's possible, but I think that's not the right way to read the statute. So you want this court to allow the agency to expand and contract with great latitude the definition of particularly serious crime and have us just bless those expansions and contractions over time? Well, I think there is a meaningful role for judicial review, but as this court acknowledged in Dennis, the Attorney General's view of what is a particularly serious crime is expansive, and this court cited that concept with favor in the Dennis case. Why didn't Congress close the gap, at least with respect to the manner of designating particularly serious crimes in the asylum statute when it said, you have this authority to go beyond aggravated felonies, but you could do it by regulation. That's how you do it. Doesn't that somewhat close the gap? It might have been if that's the way that Congress had said it, but that isn't what Congress said. Looking at the text of the asylum statute in 1158, Congress first says if the Attorney General determines that, then we get to the particularly serious crime provision, and then way down below that, well, maybe not way down, but a little bit below that is special rules, B, I, for purposes of clause 2, and that's when it gets into the equation of aggravated felonies are always going to be particularly serious in asylum. Right, so the AG has that authority to designate other crimes as particularly serious, but the way that he does it is through regulation. I don't think that's what the statute says. It gives the option, but it doesn't say that's the only way. It doesn't foreclose the Attorney General's authority. Then why would they put the word regulation there? It would just say general may designate offenses that will be considered. It wouldn't have said may designate by regulation offenses. You're asking us to read the limitation as to how it can designate other offenses out of the statute. Not true, Your Honor. By saying may designate by regulation, Congress was protecting against a future challenge to say, oh, the Attorney General couldn't designate by regulation. It would have to do it by adjudication. With that challenge, I'm sure there are creative lawyers out there who would make that argument, relying upon the language may designate offenses. How far do you think that would get? You're saying that Congress was concerned about a really ridiculous argument, and therefore they put language into the statute that we are free to ignore. I think Congress was acceptable for Congress to be concerned about that question and wanted to emphasize that the Attorney General in his silence had the authority to issue regulations, not the obligation, just the authority. You keep leaving out the measure of remedy. The remedy keeps getting put in the back of my head. Has the authority. What is that authority? To designate offenses. How? By regulation. You want us to skip over that. I'm not sure it's before it was made earlier. I'm not sure that argument's been preserved. But if it has been preserved, I'm not sure how we ignore the limitation of by regulation, other than the BIA seems to just say they can be doing it on a case-by-case basis. And a lot of circuits, every circuit except us, has gone along with that. Because Congress didn't intend to foreclose adjudication. This isn't an inclusio unius situation. This is not an either-or. I didn't say that, though. You have to argue, Pat, you have to argue history and practice and that Congress is legislating against the backdrop of a history of adjudication. That's really what you're left with, isn't it? And the plain language of the statute, which never takes place. But the plain language doesn't directly say that the agency can make this decision by adjudication. Correct. If we're on plain language, why aren't we right where Judge McKee is suggesting? By regulation means by regulation. Not by regulation and whatever other thing strikes your fancy. Congress never said only by regulation. The court is inviting a reading that inserts a word that isn't there. Can I make sure we're actually talking about the same thing? Because I understood your argument to be that the by regulation, like aggravated felony, was a way that Congress was setting out categorically what would constitute a particularly serious crime. When you're talking about adjudication, you're not suggesting that the BIA could set up as a categorical matter a crime that then per se constituted a particularly serious crime. Or are you? I thought your argument was that the case-by-case determination was a fact-based determination looking at a given case. And if you're not, if you're not, don't you walk directly into the Sessions v. DiMaia problem? That is that if it's case-by-case that you're defining categorically a crime that's going to have that immigration consequence without advance notice, then you would have a void-for-vigness problem. I understand, Your Honor, and I'm not suggesting a categorical adjudication, but a case-by-case one. As the board explained in Francesco in cases moving forward, NAM for instance, first the board looks to the crime's elements to see whether it even raises the possibility of being a particularly serious crime. If it doesn't, then we're done. But if it does, then the board will then turn to the circumstances of the crime to see whether in this particular case on these facts the crime is in fact a particularly serious crime. But you're going to turn offenses into offenders who would have considered to have committed a particularly serious crime? Because if it's case-by-case looking at offenses, doesn't that mean that after a given case is adjudicated, any other case involving that same offense, even though it might have very different facts, there's a categorical approach would still be bound by that prior determination, wouldn't it? Not necessarily, Your Honor, because as Congress recognized by saying particularly serious crime that constitutes danger to the community, I'm paraphrasing, there's some amount of fact-specific analysis that doesn't lend itself well to sort of a categorical approach. That's why I think the board was correct by saying first we have to look at the elements, but we then have to also look at the specific circumstances. And so what was for one person a particularly serious crime may not be, even if they're convicted of the same crime, may or may not be also particularly serious for the next person who comes along. It depends. You're suggesting. Go ahead. No. No, no, no, no, no, no. Look at everybody else. Look at me. You're straightaway taken from here. Thank you. Thank you. Don't worry. You and I. So you're suggesting that particularly serious crime has the same definition in both contexts, asylum and obviously withholding. So my question is this. It seems that Congress's conception is that there's a distinction to be made between the two. If that's so, then why aren't we doing the same here? Second part of the question. Is this an all or nothing? Can we, in fact, look at a lock and say in the withholding context, yes, and then look at this particular case in the asylum context and say we understand because of the different statutory context, different result. To take the second question, Your Honor. Because I might not get another chance. That's why you got two. So go. I'm with you. It should be an all or nothing. As the board explained in matter of MH, it was interpreting the asylum term particularly serious and the withholding term particularly serious. They both require this case-by-case adjudication, neither of which required as a condition precedent an aggravated felony determination. So I think they both stand, but they both fall. To reach Your Honor's first question, I'm not sure I quite understand it, but let me take a stab at it. If I miss it, please let me know. Yes, the two statutes have some differences, but they are both a categorical grant of authority to the attorney general to say what is, what is not a particularly serious crime. Now, each asylum and withholding has certain limitations, certain carve-outs, certain things where the attorney general is told to say, well, you must find that this is a particularly serious crime. You may regulate categorically what is particularly serious for asylum, but nowhere did Congress take away the broad grant of authority to say what is and what is not particularly serious. But your argument that in a certain case, an offender may have committed a particularly serious crime. In another case, that same crime, the VA may look at that and say that's not a particularly serious crime under case-by-case adjudication. That's what you're saying. On the facts and circumstances. Right. It's totally inconsistent with what the board did in NAM and the whole theory of having uniforming adjudication so that there would be some uniformity in these cases. You're totally undermining that position. Not at all, Your Honor. It's entirely consistent. How is it uniform to have, say, obstruction of justice, as was one of the cases before us with the cutting of the body? Obstruction of justice in one case would be a particularly serious offense, but in another case, it wouldn't be a particularly serious offense. How is that not being inconsistent? Let me first say that the idea of consistency across asylum and withholding is one half of this answer. The idea is that something shouldn't be a case-by-case particularly serious crime for asylum, but yet not a case-by-case particularly serious crime for withholding. The other aspect of consistency is this idea that there's this threshold question, first, of what are the elements of the crime. Does it even look like it might be particularly serious? If then and only then does the board look at the circumstances. So there is ample room for the board to be completely consistent in its determinations by saying we're looking at a particular statute that does not raise the specter of being a particularly serious crime. It is not a particularly serious crime. We're done. And then in another statute, to say this particular statute does raise the specter, so we should then look at the circumstances. In Person A's case, there are all sorts of aggravating circumstances. We conclude that it's a particularly serious crime in this case. Can I ask a question? Yes. Please get a question in, Judge Ambrose. Yes. As to the withholding statute, if, as you say, Congress wanted to let the Attorney General designate any offense that's particularly serious for purposes of withholding, why would it include the phrase, notwithstanding the length of sentence imposed in the second sentence of 1231? Judge Ambrose, that sentence in the hanging paragraph is merely a limitation on the limitation itself. It's kind of an exception to the exception, if you will. The hanging paragraph is the limitation on the general authority, the general authority being decide what is and what is not particularly serious. Then the hanging paragraph's first sentence has this limitation, AGFEL plus 5 is always going to be particularly serious. And then you're on to the sentence that you just mentioned, the previous sentence. That's a carve-out to emphasize. That's why it has meaning. It's Congress emphasizing that Attorney General, just because a crime isn't in AGFEL plus 5, it doesn't mean you can't say that it is particularly serious. The first sentence uses the word aggravated felony. So the second sentence says, the previous sentence shall not preclude the Attorney General from determining that notwithstanding the length of sentence imposed, wouldn't it have to say, or any crime, in order not to refer back to aggravated felony? In other words, the two sentences are tied together. But I don't see the words for any crime after the words sentence imposed. Correct, Your Honor. That second sentence doesn't have for any crime, and that would be a problem if we were basing our argument that the authority comes from that second sentence. But that's not where the authority of the Attorney General to say what it is and what is not a particularly serious crime comes from. It comes from the entire statute as a whole, which at the first part, if the Attorney General decides, then the alien having been convicted of a particularly serious crime. That is something, since 1980, for 39 years, the Board has been interpreting on a case-by-case basis. Since Frantescu, 1982, the length of the sentence was a factor in Frantescu. But this then modifies the case law and says, just because the sentence was short or suspended or something, doesn't mean the Attorney General can't carve it out as a particularly serious crime. That's exactly correct, Your Honor. Well, if that's—should 1158 and 1231 be read together as— since they're using the same language, as you pointed out, and you say they should have the same meaning, particularly serious crime, in both, isn't it the case that when we're reading one, we should keep in mind what the other says? Yes, Your Honor. Okay. If that's true, I'm going back to the bi-regulation point. Since that exists in one of the statutes and it doesn't in the other, doesn't that—shouldn't that indicate to us that bi-regulation really is supposed to have meaning? It's not supposed to be the kind of throwaway you're suggesting it is, which is, well, they meant bi-regulation or by other stuff, too. Doesn't the fact that it appears in one of the sections and doesn't appear in the other mean that Congress really meant, hey, when you're in this subsection, bi-regulation is a limitation on the power of the attorney general? No, because the statute that says the attorney general may bi-regulation doesn't say may only bi-regulation. I think that— What's the meaning—why—then answer Judge McKee's question, which is, what is the means—what's the purpose of saying bi-regulation, if not to imply only bi-regulation? You could have just said the attorney general can determine other things. To insert the words bi-regulation would have no purpose at all if it didn't mean only bi-regulation, would it? No, I disagree, Your Honor. What's the reason? To explicitly emphasize that the attorney general does have the authority to decide— Does Congress write statutes and include language within those statutes simply to emphasize matters? Sometimes it does, Your Honor, and this is an example of that situation. If you look at the second sentence that Judge Ambrose was asking about earlier, the previous sentence shall not preclude. That is Congress saying, hey, just in case there was any confusion, we don't mean to say that the attorney general can't say that an Agfel of fewer than five years sentence— Let me go back to the may designate by regulation for a moment. You have a question? I did, and I'll keep it brief. May designate by regulation, that language. Is it your position it is ambiguous or unambiguous? If it's ambiguous, who has the authority to interpret it? Sorry, I'm going into it multi-part. And if it's ambiguous, who has the authority to interpret it? Or are you saying it's unambiguous? May designate by regulation unambiguously is an express authority to regulate but not a limitation, or is it ambiguous and we have to interpret it or look to see if the BIA has interpreted it and give deference? Your Honor, as this issue hasn't been briefed, I'm going to give you my off-the-cuff response, which I believe that the language is unambiguous, that it gives the Attorney General the authority but not the obligation to determine by regulation. It doesn't take away the option, which we believe manifests in the statute in light of its history and purpose, to also define by adjudication. Thank you. But it could have done it without that regulation. It's surplusage, right? It's not surplusage, Your Honor. Well, so did the agency have the power to do this by regulation without this clause, or is this clause the exclusive power granted to the agency to do this by regulation? As this hasn't been briefed, I want to be a little hedgy here because I'm not sure I haven't looked into this, but I believe that the agency may have been able to interpret a statute that didn't have the by regulation clause to say, well, maybe we can do it by regulation. But I think that it's not surplusage, it's not surplusage. Because it's emphasis. It's emphasis. It's Congress specifying. Congress didn't have to specify. Just to be clear, your point is that by regulation is a way to do it categorically as an offense. And when you talk about this as an exception to the exception, this puts it back to a case-by-case determination. You're not arguing that that would be a carve-out to allow the attorney general, outside of regulations, to categorically declare a type of offense to be a particularly serious crime. You may answer the question. That's correct, Your Honor. I'm just suggesting that that second sentence in the hanging paragraph is a carve-out so that the attorney general, on a case-by-case basis, may determine whether a crime is a particularly serious one.  Thank you, Your Honor. Mr. Erwinstein, you have rebuttal. Thank you, Your Honor. One of the first things I want to do is let you know that since January, I've had the pleasure of serving in the Pennsylvania General Assembly. And my goal... No, I love my district. I represent the neighborhood that I grew up in. But my experience, brief as it is, as a legislator, has shown me that that concept of what is Congress intending or what is the legislature intending to do, frankly, isn't something that we can really look to. And that's why we have the canons of statutory interpretation that we do. And those canons all start with what is the plain language. And with respect to the comparison between these two places where this same term occurs and the differences and the similarities between the two, in all honesty, with respect to a locker and whether the court is looking at that, we can only look at the withholding portion of this statute when we're examining a locker specifically. You're telling us we shouldn't be looking at the asylum statute to understand what the words mean in the withholding context? I think that is of limited utility... It's the same words. If the plain language is within the withholding portion of the statute... Mr. Hohenstein, isn't one of the primary canons of construction to look to the context and the structure of the statute generally? Correct. So if we're looking at the same words in the same statute, the INA, shouldn't we be paying attention to how they're used in one section and not ignoring that section just because they show up in the section in a way you like better when it comes to withholding? No, absolutely you should look at them. But you should also recognize the differences between asylum as a relief and withholding as a relief. They both have their basis in international law. When we went through immigration law classes in law school, one of the primary points that was driven home to us was that asylum was the U.S. government's construct of refugee law, but the withholding statute was the catch-all that effectively had us complying with our obligations under the treaty. Let me interrupt you long enough to make sure I get an answer to one question, then I'll be quiet. I would like you to answer the point that Judge Krauss asked repeatedly to Mr. Moss, which is, is the use of the words by regulation in the asylum context a way, and if I say it wrong, Judge Krauss, correct me, is that a way of saying to the Attorney General if you want to do something on a per se basis, if you want to categorically state that something is a particularly serious crime, you must do it by regulation. Otherwise, impliedly, you are free to do a case-by-case analysis on a fact-specific basis. Is that what the words by regulation mean in that statute? Or is that a reasonable construction of the statute? I would say that's an absolutely reasonable construction of that portion of the statute, and I also believe that that is consistent with the plain language that we, that this court found in Locken that I'm urging that it continue to uphold for the withholding statute, because the withholding statute doesn't have that element of categorical aspect for expansion of discretion. Then that presupposes adjudication on a case-by-case basis, right? Frankly, yes. And I think both sections do that. Remembering, again... Both sections allow case-by-case adjudication? Again, with the idea that within the withholding statute, there's a bit more limitation precisely because the withholding statute is viewed as our national compliance with international law. And asylum provided almost that compliance, but there's just a little bit of wiggle room for us to do things a little bit more independently than we might otherwise be required to under international law. And that's one of the reasons... I think your point was going to be slightly different, that we have a lower tolerance essentially for criminal behavior in the asylum context than we do in the withholding context. In the withholding context, if it's an aggravated felony and it's five years or more, you're done. But there's that leeway if it's less than five years. And we have sort of, if you will, a lower tolerance in the asylum context, which is, I thought, going to be your focus as to why, despite the same words, it should be looked at differently. It's actually the other way. If you look asylum, any aggravated felony, automatically a PSA. In withholding, while, yes, it's aggravated felony plus five, it still allows that appropriate discretion to find other aggravated felonies to be particularly serious. And so there's more tolerance for criminal activity within a withholding context because you could conceivably have a less than five-year aggravated felony not be particularly serious in a withholding context and it would already, but it would disqualify someone from asylum. One of the problems I've been wrestling with is maybe work this into response. The way this is, when I say this, I'm looking at 1231, sub 4, whatever is before the 5-4. It doesn't talk about the sentence that the individual, it talks about the sentence the individual received. It ignores the criminal exposure. So no matter what the legislature, in a particular jurisdiction, has determined to be the seriousness of the offense, as measured by the period of incarceration the individual is exposed to for committing that crime, that doesn't matter. What matters is how much time the person was sentenced to. And that's a strange way, it seems to me, of drafting it. It didn't say anybody has been sentenced for a crime which provides for a period of imprisonment of five years or more. It says an aggregate term has been sentenced to an aggregate term of imprisonment of at least five years. What, if anything, should we get from that? I think what we say is that that was, that line, aggravated plus five, is where Congress decided that was our limit to what we needed as a country to comply with the treaty requirements. In other words, setting that bar and saying anything over it is absolutely going to disqualify you. That's unique in immigration law in the sense that that is the space, that's the space where Congress tells the AG or the immigration judge who is ever acting for the AG, you cannot exercise your discretion over this bar. But then it also needed to establish a floor in order to be able to set the framework in which discretion could be exercised. And that framework has the same floor with a little bit more leeway than the floor that's established in the asylum statute. The floor established in the asylum statute is any AG fell. That's it. The floor established in the withholding statute is any AG fell with a little bit of wiggle room up to five years. And that's where the discretion can come in. One final thing, and I know that the courts have essentially. Can I just, why did you say that in the asylum statute the floor has to be aggravated felonies? Can't, doesn't the hanging clause in the asylum statute give the attorney general, whether by regulation or otherwise, that's another issue, to designate any crime, not just aggravated felonies. It does. The attorney general hasn't done that yet. But that's how. So, in effect, that sub second subsection in the asylum statute has never been utilized. It's like a light switch that's never been turned on. So you're. Yes. That's fine. Thank you. You're asking us to accept a plain language argument. But I understand a lot of your argument to be an expression of this kind of argument. It's a different kind of construction, just plain language. And if we have to resort to a kind of construction like that to interpret silence in a statute, why isn't why doesn't that necessarily mean there's ambiguity? And when we have a lock on one hand and we have the Seventh Circuit, I mean, the others have treated as ambiguous. But the Seventh Circuit has said it's unambiguous in the government's favor. When we have two circuits that look at the same language and and accepting a lockup as addressing plain language, come to opposite conclusions again. Doesn't that speak to ambiguity in the statute? And you may, of course, answer the question. Thank you. I think the focus on ambiguity, Judge Amber's question really drives home that point, which is unless you do something to change that second sentence, the current interpretation that the board is trying to have us read would completely read out that second sentence in this in the subsection. And so the the grammatical and legal rules that we would use to relate that first sentence of the hangings paragraph with the second sentence, that does make it plain. And so all these arguments that I've been making to you are with respect to what the different statutes mean are simply to provide some additional context. But at the core, I do believe it is at an interpretation of the plain language. And with respect to how primarily the Seventh Circuit, because all of the other circuits tended to just sort of follow along with it. And Seventh Circuit was the only other decision that was made right around the same time as a lockup and didn't consider it. I think they were issued very close to each other. The Seventh Circuit actually never looked at each of those independent sentences in relation to each other when it determined ambiguity. In other words, it didn't take that first step that we that we always take when we examine a statute, which is let's look at each of the elements and each of the specific sentences and words that are used. And it never actually engaged in a first step Chevron analysis. It just gets straight to the second. And that's really the primary defect with all of the other circuits and frankly, with the board's own interpretation. Thank you very much. Thank you very much for allowing. Thank you to all of the council for your helpful arguments. The court will take this matter under advisement and I will ask the clerk to adjourn the proceedings.